RENDERED: JANUARY 29, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1464-MR

TERRY JENKINS             APPELLANT

APPEAL FROM HARLAN CIRCUIT COURT
v.     HONORABLE KENT HENDRICKSON, JUDGE
ACTION NO. 13-CR-00013

COMMONWEALTH OF KENTUCKY             APPELLEE

AND             NO. 2019-CA-1466-MR

TERRY JENKINS             APPELLANT

APPEAL FROM HARLAN CIRCUIT COURT
v.     HONORABLE KENT HENDRICKSON, JUDGE
ACTION NO. 13-CR-00551

COMMONWEALTH OF KENTUCKY             APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

JONES, JUDGE:  Terry Jenkins appeals the order revoking his probation following various violations.  Following review of the record and all applicable law, we affirm.

## I.    BACKGROUND

On May 3, 2017, Terry Jenkins entered an *Alford*[1] plea in two criminal cases against him.  In Harlan Circuit Case 13-CR-00013, he pleaded guilty to two counts of sexual abuse in the first degree, victim under twelve years old.  In Harlan Circuit Case 13-CR-00551, he pleaded guilty to three counts of sexual abuse in the first degree, victim under twelve years old; one count of unlawful transaction with a minor in the first degree, minor less than eighteen years old; escape in the second degree; tampering with a prisoner monitoring device; resisting arrest; and fleeing or evading police in the second degree.  The trial court sentenced Jenkins to a total terms of ten years' imprisonment on each case and ordered that the sentences run concurrently.  The sentences were probated for a term of five years.

Jenkins's probation was subject to his compliance with the conditions of supervised probation, which were incorporated into the judgments by reference.  Those conditions included among other things:  1) truthfully and fully answering

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

all inquiries from probation and parole; and 2) undergoing any treatment directed by the court, which included the sex offender treatment program ("SOTP") in Jenkins's case. Jenkins's requirement to complete SOTP required him to comply with additional supplemental conditions such as not establishing any sexual or dating relationship without the prior approval of his probation officer and treatment clinician; reporting any relationship with another person who has minor children, whether in the home or not, to his probation officer and treatment clinician immediately; not having contact[2] with anyone under the age of eighteen, unless it is specifically authorized by his probation officer and clinician; and reporting any incidental contact with anyone under the age of eighteen to his probation officer within twenty-four hours.

On July 23, 2019, Jenkins's probation officer, Jonathan Creech, completed a violation of supervision report with respect to Jenkins's probation. Therein, Creech outlined numerous violations by Jenkins: (1) being terminated from SOTP on July 10, 2019, for violating contract terms, his arrest for new sexual offense charges,[3] and being dishonest with the SOTP treatment team; (2) failing to seek approval from Officer Creech and his treatment clinician, Amy Long, before

---

[2] "Contact" was defined as "face-to-face, telephonic, any correspondence including electronic, written, and visual, or any indirect contact via third parties."

[3] The conduct giving rise to the charges occurred prior to Jenkins's guilty pleas even though the charges were not brought until after the pleas. Accordingly, the new charges were not relied on by the Commonwealth to support its revocation motion.

beginning a romantic and sexual relationship with Cathy Cook, a woman with three minor children; (3) being dishonest with Long and Officer Creech regarding the nature of his relationship with Cook; (4) having indirect contact with Cook's three children; and (5) failing to report said contact to Officer Creech and Long.

On or about August 8, 2019, the Commonwealth moved the Harlan Circuit Court to revoke Jenkins's probation; a copy of Officer Creech's report was attached to the Commonwealth's motion. The Commonwealth asserted that the numerous violations outlined by Officer Creech demonstrated that Jenkins had failed to comply with the conditions of his supervision, that his failures constituted a significant risk to Jenkins's prior victims and the community at large, and that Jenkins could not be managed appropriately in the community.

The trial court conducted a hearing on the Commonwealth's revocation motion on August 15, 2019, at which Officer Creech testified for the Commonwealth and Cook testified for Jenkins.

Officer Creech testified that he was contacted on June 12, 2019, by Long. Long relayed that Jenkins had approached her and sought permission to have Cook, whom Jenkins characterized as a long-time friend, be his partner for group meetings. Jenkins denied being in a romantic or sexual relationship with Cook. Officer Creech received an anonymous complaint the next day that Cook

-4-

was actually Jenkins's girlfriend, and the pair had been living together. He was also informed Cook had three minor children.

On June 14, 2019, Officer Creech completed a home visit at Jenkins's address of record. Both Jenkins and Cook were at Jenkins's residence when Officer Creech and other officers arrived. Jenkins again denied being in a romantic or sexual relationship with Cook. Jenkins told Officer Creech that Cook was simply a friend who was helping Jenkins care for his mother. When Cook was questioned, she claimed to be Jenkins's cousin. Women's clothing along with Bath & Body Works coupons were observed in Jenkins's home. Jenkins and Cook denied that Cook was living in the home and denied that these items belonged to Cook.

Jenkins continued to deny that he was in a relationship with Cook or that he knew she had children. After additional discussion with Long, Jenkins eventually admitted that Cook had been staying in his home for approximately a week and that he was aware she had three children. He still continued to deny that he was in a sexual relationship with Cook or that he had ever had contact with her children. At this point, Jenkins was informed that he would have to submit to a polygraph examination if he were to stay in the SOTP because of his prior inconsistent statements.

The following day, Jenkins requested permission to begin dating Cook. He admitted that his relationship with Cook had been sexual for the past month despite his having not sought prior permission. Jenkins continued to deny having any contact with Cook's children. However, Officer Creech testified that he subsequently learned from Cook's mother that Jenkins had at least indirect contact with Cook's children in the parking lot of a local restaurant and that he had viewed photographs and videos of this contact.[4] Officer Creech alleged Jenkins never informed him of any contact, indirect or otherwise, he had with minors, in violation of his requirement to do so.

Finally, Officer Creech confirmed that the SOTP had terminated Jenkins's participation in the program effective July 10, 2019, based on his new charges, dishonesty, engaging in high risk behaviors by maintaining a sexual relationship with a woman who had minor children, and for failing to notify his clinician that he was living with Cook and engaging in a sexual relationship with her.

On cross-examination, Jenkins spent the majority of his energy focusing on his alleged indirect contact with Cook's minor children. Despite having been shown photos and a video of the incident, Officer Creech was not aware whether the indirect contact occurred right next to the car, or across the

_____

[4] The photographs and videos were not introduced during the revocation hearing.

parking lot. He acknowledged Jenkins did not talk to, wave at, or otherwise send a message to the children. He further acknowledged that for approximately two years, Jenkins had remained compliant with the terms of his probation. He stated by the time this came to his attention, he had already been terminated from the SOTP.

Jenkins called Cook to testify on his behalf. Cook has three minor children: a 15-year-old, a 12-year-old, and a 6-year-old. She denied Jenkins has had any contact with her children. Cook testified she walked the distance from her children from approximately 75 to 100 feet across the parking lot to where Jenkins sat in the vehicle. She also stated he did not wave, smile, or otherwise look at the children. She claims she takes great care to keep her children away from Jenkins.

At the conclusion of the hearing, the trial court made the following oral findings and conclusions on the record:

> The evidence is clear that he was terminated from the sex offender program, period, for violating contract terms. He violated probation and parole's supplemental conditions of supervision for sex . . . Failed to cooperate with the probation and parole officer—he did. Even if the evidence is mixed on whether he had unsupervised contact with juveniles without permission, and I am not convinced he didn't, but that may be mixed. But nonetheless, the rest is established for the Commonwealth, so probation's been revoked. He can't be managed in the community and he can't behave himself and he's a danger to others. So probation is revoked.

Video Record ("V.R.") 8/15/19 12:28:20-12:29:25.

Thereafter, on August 28, 2019, the trial court entered a written order revoking Jenkins's probation. In its written order, the trial court determined that Jenkins "violated the terms of his probation" and "[g]iven the charges for which [Jenkins] stands convicted, the Court is particularly disturbed by [Jenkins's] unauthorized relationship with a woman who has two minor children, and the fact that the woman's own mother felt it necessary to bring the matter to Officer Creech's attention heightens the Court's concern."[5] The trial court further determined that Jenkins's failure to comply with the conditions of his supervision constituted a significant risk to prior victims and to the community at large and that Jenkins could not be appropriately managed in the community.

This appeal followed.

## II.   STANDARD OF REVIEW

We review a circuit court's decision to revoke probation for an abuse of discretion. *Lucas v. Commonwealth*, 258 S.W.3d 806, 807 (Ky. App. 2008). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

---

[5] We note that the record actually established that Cook had three minor children.

## III. ANALYSIS

In *Commonwealth v. Andrews*, 448 S.W.3d 773 (Ky. 2014), the Kentucky Supreme Court held that "KRS[6] 439.3106(1) requires trial courts to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community before probation may be revoked." *Id*. at 780. By requiring such a determination, "the legislature furthers the objectives of the graduated sanctions schema to ensure that probationers are not being incarcerated for minor probation violations." *Id.* at 779. This Court has concluded "the General Assembly intended the task of considering and making findings regarding the two factors of KRS 439.3106(1) to serve as the analytical precursor to a trial court's ultimate decision: whether revocation or a lesser sanction is appropriate." *McClure v. Commonwealth*, 457 S.W.3d 728, 732 (Ky. App. 2015). "These findings can be either oral or written to satisfy both KRS 439.3106(1) and the defendant's due process rights." *Commonwealth v. Gilmore*, 587 S.W.3d 627, 630 (Ky. 2019).

Additionally, the Court in *Andrews* cautioned that its holding did "not upend the trial court's discretion in matters of probation revocation, provided that discretion is exercised consistent with statutory criteria." *Andrews*, 448 S.W.3d at

---

[6] Kentucky Revised Statues.

780. Accordingly, because "KRS 439.3106 permits, but does not require, a trial court to employ lesser sanctions . . . incarceration remains a possibility." *McClure*, 457 S.W.3d at 732.

"An individual's probation may be revoked any time before the expiration of the probationary period when the trial court is satisfied by a preponderance of the evidence presented in a revocation hearing that the probationer violated a condition of probation." *Barker v. Commonwealth*, 379 S.W.3d 116, 123 (Ky. 2012). Jenkins's first argument is that the trial court abused its discretion when it found that Jenkins violated the terms of his probation by having unauthorized contact with minor children. Reading the written order in combination with the trial court's oral findings on the record, however, flatly contradicts Jenkins's assertion that his probation was revoked based on his alleged contact with Cook's three minor children.

The trial court was clear that it was not totally convinced that Jenkins had engaged in contact with the three children. Nevertheless, it determined that Jenkins violated other terms of his probation including having his participation in the SOTP revoked and failing to cooperate with Officer Creech. It was undisputed that the SOTP terminated Jenkins's participation before he had successfully completed the program. Jenkins's parole was conditioned on his participation in the SOTP. His termination from the program was a violation of his probation.

Additionally, the trial court found that Jenkins had failed to cooperate with probation officers. This finding is supported by Officer Creech's and Cook's testimony during the revocation hearing. Officer Creech testified that during the home visit, Jenkins denied that he was in a relationship with Cook and denied she was living at his home. Jenkins subsequently admitted that Cook was living at his home and that he had been in a sexual relationship with her for a month prior. Not only did these subsequent revelations prove Jenkins had previously been dishonest with probation officers, they also demonstrated that Jenkins had violated the supplemental terms of his probation insomuch as he was required to secure prior approval before having contact with someone known to have minor children, engaging in a sexual relationship with anyone, or changing his living arrangements.

Jenkins next asserts that the trial court failed to make sufficient findings to support its conclusion that Jenkins's conduct posed a risk to his prior victims and the community at large and that he could not be managed appropriately in the community. We disagree. The trial court referenced the nature of Jenkins's prior convictions, engaging in unlawful sexual activity with minor children, as compared with his probation violations. Jenkins's violations arose out of his desire to hide a sexual relationship with a woman he knew had three minor children similar in age to Jenkins's prior victims. Jenkins's violations placed him in close

-11-

proximity to someone with minor children and his insistence in engaging in a relationship with Cook without having first secured appropriate permission to do so called his judgment and motives into suspicion. Moreover, Jenkins's repeated dishonesty about the relationship caused him to be terminated from SOTP. The trial court appropriately concluded that Jenkins could not be managed in the community, especially since he was no longer receiving treatment as part of SOTP. *See Gamble v. Commonwealth*, 293 S.W.3d 406, 409 (Ky. App. 2009).

Jenkins went to great lengths to conceal the nature of his relationship with Cook, hiding it for at least a month and stating repeatedly she assisted him with his mother. It was not until Jenkins was informed he would have to undergo a polygraph examination that he revealed the extent of the relationship. This evidenced a repeated pattern of dishonesty, unbefitting of someone capable of being managed in the community. The probation officer testified Jenkins was terminated from his treatment program, a clear condition of his probation. Given all of the evidence presented to the trial court, it did not act unreasonably when it found Jenkins could not be managed in the community and constituted a significant risk.

In sum, we discern no abuse of discretion in the trial court's decision to revoke probation. This is especially true given the crimes for which Jenkins stands convicted and the nature of the violations. The trial court was rightfully

concerned with Jenkins's relationship with a woman who has minor children and all the dishonesty surrounding it. Requiring those convicted of harming minor children to inform their probation officers and treatment officers of any intended romantic relationship is meant to protect the public. It informs their partners of their backgrounds and any children to whom they might be connected. *Wilfong v. Commonwealth*, 175 S.W.3d 84, 99 (Ky. App. 2004).

Jenkins's final argument is that the trial court should have ordered a sanction short of full revocation. While it is true that the trial court *could* have ordered a lesser sanction, our case law is clear that the trial court is not required to order a lesser sanction. *Andrews*, 448 S.W.3d at 780. Decisions regarding probation revocation are vested within the sound discretion of the trial court. In this case, Jenkins carried on a relationship for a month, with a woman who has minor children, without seeking the permission of probation officers. He denied the nature of their relationship repeatedly. Given the nature of the crimes for which Jenkins was convicted and the tenor of the violations, we discern no abuse of discretion in the trial court's decision to revoke Jenkins's probation.

## IV. CONCLUSION

The Harlan Circuit Court's order revoking Jenkins's probation is affirmed.

ALL CONCUR.

-13-

BRIEF FOR APPELLANT:

Russell D. Alred
Harlan, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Aspen Roberts
Assistant Attorney General
Frankfort, Kentucky